No. 19,616.

J. E. Brewer and C. S. Brewer, Copartners, etc., *Appellees,* v. The Western Union Telegraph Company, *Appellant.*

### SYLLABUS BY THE COURT.

Order—*Shipment of Eggs—Mistake in Telegram—Measure of Shipper's Recovery.*  In an action against a telegraph company for damages resulting from an error in transmitting a telegram ordering a shipment of eggs, the evidence is held sufficient to support findings that they were worth more than the price the shipper was able to obtain for them, and that he understood, and had sufficient ground for understanding, that the order referred to candled eggs.

Appeal from Dickinson district court; Roswell L. King, judge.  Opinion filed July 10, 1915.  Affirmed.

*G. W. Hurd, Arthur Hurd,* and *Bruce C. Hurd,* all of Abilene, for the appellant; *George H. Fearons,* of New York, N. Y., of counsel.

*S. S. Smith,* of Abilene, for the appellees.

The opinion of the court was delivered by

MASON, J.: A firm at Houston, Tex., gave to the Western Union Telegraph Company at that place, for transmission to J. E. and S. C. Brewer, merchants at Abilene, a telegram ordering the shipment of a hundred cases of eggs (3000 dozen) at twenty-six cents a dozen. The message as delivered read "thirty-six cents." The Brewers filled the order. The consignees refused to accept the eggs at thirty-six cents, and on the representation that their order named twenty-six were allowed to take them at that price. The shippers then sued the telegraph company for the loss occasioned by its mistake, and upon a trial without a jury recovered a judgment for $224, from which it appeals.

The recovery was evidently on the basis of a loss of seven and one-third cents a dozen, the additional $4 being for protest fees on the draft made against the shipment. The parties agree that the measure of damages is the difference between the amount the plaintiffs were able to obtain for the eggs and their market value at Abilene at the time of the shipment. But the defendant insists that there was no evidence whatever that they were worth more than twenty-six cents a dozen. The plaintiffs candled the eggs before shipping them. There was testimony that they were worth from thirty-five to thirty-six cents a dozen; that before being candled they were worth thirty cents, and that the candling cost from four to five cents a dozen. Matters were brought out on cross-examination having some tendency to discredit these estimates, particularly in that the specific sales testified to were in less quantities than the Texas shipment, and that sales at twenty-six cents had been made shortly before and shortly after that shipment. But it can not be said as a matter of law that all basis for them was removed. As to the amount obtainable at Houston for the eggs, the plaintiffs are not concluded by the fact that they allowed the buyers to take them at twenty-six cents. Upon being advised that this was the offer actually made by their customer they were justified in settling on that basis. They were not bound at that stage of the proceedings to take their chances of finding another purchaser for the eggs. The defendant maintains that the order did not call for candled eggs, and that there was no occasion or warrant for candling

them.   The telegram, which was sent January 15, 1910, read:
"Ship hundred cases aprils monday thirty-six."   On January
6 the Texas firm had written to the plaintiffs, acknowledging
a quotation of twenty-seven cents, saying that that price was
too high, and complaining of the condition in which a part of
an earlier shipment had been received.   The plaintiffs an-
swered January 8, agreeing to make good the loss referred to,
and concluding:

"We note that you will likely need some more storage eggs.   stock are
getting low with prices higher and indications of a still further advance.
We have a few mays, also about fifty cases aprils which went into this
cooler the forepart of may left.   There is a car of late aprils here owned
by a party outside of town which we have for sale.   all of the above
will be sold as they come out of the cooler and not candled.

"Should you need any eggs for local shipment we have a few hundrel
cases of our early aprils left that we will agree to candle for you prior
to shipment and thus avoid complaints on quality.   besides this will give
you some find [fine] stock.. however the price will be quite a bit higher,
as we find it costs us considerable to candle this april stock at this time
of the season.

"Let us hear from you."

It was a fair question for the determination of the trial
court whether under all the circumstances the plaintiffs under-
stood and had sufficient grounds for understanding that the
offer of thirty-six cents was intended for candled eggs.

It is suggested that the plaintiffs should not have been
allowed to recover the protest fees on the draft.   No reason
is apparent why they were not entitled to this.   The telegram
was an order to ship the eggs.   It was in accordance with
ordinary business usage that a draft should be made against
them.   The telegraph company might reasonably have antici-
pated that in the event of a mistake in transmitting the tele-
gram, by overstating the price offered, the draft would go to
protest.

The judgment is affirmed.